UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILL ELIZABETH HUNTER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:17-cv-00952-JDP<br><br>ORDER ON SOCIAL SECURITY APPEAL<br><br>ECF No. 1 |

**I.    INTRODUCTION**

Plaintiff Jill Elizabeth Hunter ("claimant") has filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying her application for disability and disability insurance benefits. ECF No. 1. The case has been submitted on the parties' briefs. The court will affirm the Commissioner's decision.

**II.    THE DISABILITY EVALUATION STANDARD**

A person has a "disability" under the Social Security Act if the claimant cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The physical or mental impairment must be an anatomical, physiological, or psychological

abnormality "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. §§ 423(d)(3), 1382c(a)(3)(D). The impairment must be sufficiently severe that the claimant cannot perform her previous work and cannot—considering her age, education, and work experience—engage in substantial gainful work that exists in the national economy. *See id*. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must consider the combined effect of all the claimant's impairments, regardless of whether any individual impairment is on its own severe enough to constitute a disability. *See id*. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Social Security Administration has a sequential, five-step process for evaluating a claimed disability. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(f). If a claimant is determined to be either disabled or not disabled at any step in the sequence, the analysis ceases without a consideration of subsequent steps. *Id*. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. *Id*. §§ 404.1520(b), 416.920(b). At step two, the Commissioner considers whether the claimant has a severe impairment or combination of impairments that significantly limit his ability to perform basic work activities. *See id*. §§ 404.1520(c), 416.920(c). At step three, the Commissioner determines whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"). *See id*. §§ 404.1520(d), 416.920(d). At step four, the Commissioner determines whether the claimant can perform his or her past jobs. *See id*. §§ 404.1520(f), 416.920(f). At step five, the Commissioner determines whether the claimant can perform other work that exists in significant numbers in the national economy. *See id*. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### III. PROCEDURAL BACKGROUND

Claimant filed an application for a period of disability and disability insurance benefits beginning March 14, 2013. AR 17.[1] The decision of the Administrative Law Judge ("ALJ") to

---

[1] All "AR" citations refer to the administrative record. ECF No. 9.

2

deny benefits on April 5, 2016 became the final decision of the Commissioner May 16, 2017 when the Commissioner's Appeals Council denied claimant's request to review the appeal. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481. The ALJ's decision is now before this court for review.

## IV. THE COMMISSIONER'S FINAL DECISION

The ALJ found that claimant was not disabled. AR 28-29. At step one, the ALJ found that claimant had not engaged in substantial gainful activity since the alleged onset date of her disability, March 13, 2013. AR 19. The ALJ then found severe impairments at step two: "right cranial pain syndrome with distribution characteristics of a combination of glossopharyngeal neuralgia, V3 trigeminal neuralgia, and geniculate neuralgia/episodic otalgia (20 CFR 404.1520(c))." AR 19.

At step three, the ALJ found that claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, Subpart P, 20 CFR Part 404." AR 21. In coming to this conclusion, the ALJ discounted the medical opinion of Dr. Rack, "an impartial and neutral" expert paid by the Social Security Administration to testify at the hearing, who testified that while claimant did not meet the exact criteria of any listed impairment, her conditions were the equivalent of the listing for peripheral neuropathy. AR 21, 56.

Between step three and step four, the ALJ determined that claimant had the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can frequently balance and stoop. She must avoid concentrated exposure to workplace hazards such as unprotected heights and fast moving/unprotected machinery. She can traverse uneven terrain on a frequent basis. She can have frequent verbal communication. She can climb ramps and stairs frequently. She can never climb ladders ropes and scaffolds. She cannot perform fast-paced production work. She must avoid concentrated exposure to excessive noise and temperature extremes of hot or cold. She will be off task 5% of the time.

AR 21-22. In reaching this determination, the ALJ found that "claimant's statements concerning

3

the intensity persistence and limiting effects of [her] symptoms were not entirely credible." AR 23.

At step four, the ALJ relied on a Vocational Expert's ("VE") testimony and found that claimant was "capable of performing past relevant work as a dental hygienist." AR 27. Nonetheless, the ALJ proceeded to step five and found that, as an alternative to working as a dental hygienist, "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." AR 27. Specifically, the VE testified that claimant could work as a "hand packer," "laborer stores," or "cleaner II." AR 28. The ALJ thus concluded that claimant was not disabled as defined in the Social Security Act. AR 28.

## V. STANDARD OF REVIEW

A district court will set aside the Commissioner's final decision denying benefits only if that decision is either (1) not supported by substantial evidence or (2) based on a legal error. *See* 42 U.S.C. § 405(g); *Wellington v. Berryhill*, 878 F.3d 867, 871 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance; [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). In evaluating whether a decision of the Commissioner was based on substantial evidence, the court reviews the "entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citations omitted). If the evidence can reasonably support either affirming or reversing the Commissioner's final decision, the court may not substitute its judgment for that of the Commissioner—and thus affirms under the substantial evidence standard. *Id.*; *see Revels*, 874 F.3d at 654 ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). However, in evaluating whether a decision is supported by substantial evidence, the court reviews only the reasons provided by the Commissioner in the disability determination and may not affirm based on a

ground upon which the Commissioner did not rely. *See Revels*, 874 F.3d at 654. The court will find legal error if it concludes that the Commissioner applied the wrong legal standard. *See Wellington v. Colvin*, 2016 WL 224184, at *5 (E.D. Cal. Jan. 19, 2016), *aff'd sub nom. Wellington v. Berryhill*, 878 F.3d 867 (9th Cir. 2017).

## VI. DISCUSSION

Claimant argues that the ALJ committed two errors: (1) "The ALJ failed to properly assess Dr. Rack's testimony that Hunter's condition equals the listing;" and (2) "The ALJ erred in failing to credit Hunter's consistent pain testimony." ECF No. 18 at 13, 17 (capitalization altered). The court will consider each argument in turn.

### A. Whether the ALJ Erred in Discounting Dr. Rack's Opinion that Plaintiff's Impairments Equaled the Listing for Peripheral Neuropathy

As discussed above, at step three of the Social Security's disability-determination process, the Commissioner determines whether the claimant has "an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)." 20 C.F.R. § 404.1520(d). If a claimant has a listed impairment or its equivalent, the Commissioner will find a claimant to be "disabled without considering [the claimant's] age, education, and work experience." *Id.* The Supreme Court has explained when an unlisted impairment may be considered equal to a listed impairment: "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531-32 (1990) (footnote omitted) (quoting 20 C.F.R. § 416.926(a) (1989)). The Court further explained that "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.*; *see Kennedy v. Colvin*, 738 F.3d 1172, 1176, 1178 (9th Cir. 2013) (relying on *Zebley* to reject claimant's argument that "his physical impairments are so severe that they compensate for the onepoint difference between his IQ score and the score required under the listing," because claimant failed "demonstrate that he medically equaled each of the individual criteria" of relevant

5

listing).

In the instant case, claimant argues that the ALJ erred in discounting the testimony of Dr. Rack, who opined that claimant's impairments are equivalent to the listing of peripheral neuropathy. ECF No. 18 at 13-17 (citing AR 21). Peripheral neuropathy, listing § 11.14, is defined as follows:

> 11.14 Peripheral neuropathy, characterized by A or B:
>
> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>    1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>    2. Interacting with others (see 11.00G3b(ii)); or
>    3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>    4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404 Appendix 1.

Dr. Rack testified that, while claimant did not meet the exact criteria of any listed impairment, her conditions were the equivalent of listing § 11.14:

> I would think that 11.14 would be equaled if not exactly met because she doesn't have the disturbances of motor function that are suggested in the listing but I think her listing would be equaled because of the intensity and persistence and nature of the problem that she exhibits.

AR 60. Claimant argues that "[t]he ALJ ignored this testimony and focused instead on the specific criteria of the listing." ECF No. 18 at 17. Indeed, the ALJ focused on the discrete elements of the 11.14 listing:

> There was no evidence of disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station and there was no evidence of sensory or motor aphasia resulting in ineffective speech or communication. There was no evidence of paresis paralysis tremor

6

or other involuntary movements ataxia and sensory disturbances.

AR 21.

Though plaintiff takes umbrage with the ALJ's focus on the discrete elements of listing 11.14, the ALJ followed the approach mandated by *Zebley*. *See* 493 U.S. at 531-32 (holding that a claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment" for a claimant's condition to equal a listing). Dr. Rack's opinion could not be the basis for a proper finding of equivalency because Dr. Rack acknowledges that claimant's medical evidence does not equal all the required criteria of 11.14. *See* AR 60 (stating that claimant "doesn't have the disturbances of motor function that are suggested in the listing"). Therefore, the ALJ did not err by giving Dr. Rack's testimony "little weight."[2] AR 21.

**B. Whether the ALJ Erred in Evaluating Claimant's Pain Testimony**

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (internal citations omitted). An ALJ must engage in a two-step analysis to determine whether a claimant's testimony concerning subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "[T]he claimant is not required to show her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. Second, if there is no evidence of malingering, the ALJ may reject a claimant's testimony about the severity of the pain "only by offering specific, clear and convincing reasons for doing so." *Id*. at 1015; *see also Trevizo v. Berryhill*, 871 F.3d 664, 679

---

[2] Claimant also challenges the ALJ's decision to find that plaintiff's impairments did not equal a listed impairment on the ground that the ALJ's characterization of claimant's treatment was inaccurate. ECR No. 18 at 18. Whether or not the characterization was accurate, the ALJ correctly noted that claimant's symptoms were "not at least equal in severity and duration to the criteria of listing 11.14," AR 21, so claimant's impairments could not equal a listed impairment.

7

(9th Cir. 2017) (reaffirming the application of the two-step analysis in *Garrison* after Social Security Ruling 16-3p (2016)).

Factors that an ALJ may consider in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks and citations omitted).

Here, the ALJ followed the two-step analysis and found that claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that claimant's statements about "the intensity, persistence and limiting effects of these symptoms were not entirely credible." AR 23. The ALJ's asserted bases for this finding were that claimant's statements not entirely consistent with the claimant's medical records, course of medical treatment, use of medications, work history, and daily activities. AR 23-25. Considering these bases, which are discussed in more detail below, the court concludes that the ALJ offered "specific, clear and convincing reasons" for partially discounting claimant's statements about the limiting effects of her symptoms. *Garrison*, 759 F.3d at 1015.

Claimant raises several arguments for why the ALJ erred at the second step. Though the court finds these arguments to be unavailing, we will address each in turn. First, claimant argues that her condition does not produce objective indicators of pain, so it was inappropriate for the ALJ to discount her allegations for lack of evidence. ECF No. 18 at 19. In the ALJ's decision, she describes each medical record, concluding that claimant's "allegations in this case . . .

contrasted sharply with her essentially normal clinical presentation in the treatment context." *See* AR 23-25. In particular, the November 4, 2015 examination by Dr. Linskey and the January 20, 2016 examination by Dr. Bhatia indicate that plaintiff did not suffer severe symptoms, supporting the ALJ's conclusion that claimant's statements were not entirely consistent with medical records. *See* AR 23-24 (citing Exhibits 14F, 15F). Whether or not claimant's condition produced objective indicators of pain, the ALJ reasonably concluded that plaintiff's pain testimony was unsupported by this medical evidence.

Second, claimant argues that, contrary to the ALJ's conclusion, her course of treatment was not inconsistent with her pain. ECF No. 18 at 22. In her decision, the ALJ noted that, plaintiff's "treatment consisted only of a brief trial of Tegretol; and she admitted she was no longer taking it and she declined surgery." AR 25; *see* AR 24 (noting that claimant was not an any medication therapy as of November 4, 2015). Claimant argues that her limited use of medication does not establish that she did not feel severe pain; instead, she argues that it shows that the medications she was prescribed were ineffective and therefore discontinued. ECF No. 20 at 3. Claimant also argues that the ALJ's decision is wrong because "Hunter searched many a specialist in an effort at obtaining some level of relief."³ ECF No. 18 at 22. Given claimant's rare medical condition, the court is sympathetic to her argument that her limited use of medications does not necessarily indicate that her course of treatment was inconsistent with her pain. However, given claimant's decision to decline surgery, we cannot find that the ALJ's conclusion that claimant's course of treatment was inconsistent with her pain to be unsupported by substantial evidence.

Third, claimant argues that the ALJ mischaracterized her course of treatment as conservative. ECF No. 18 at 23. In particular, claimant contends that "[t]he ALJ misstates Dr. Linskey's assessment of the success of surgery." *Id.* In her decision, the ALJ describes the assessment as follows:

---

³ The Commissioner counters this contention by pointing out a "more than year-long gap in seeking any treatment after seeing" a certain specialist. ECF No. 19 at 17.

9

> Dr. Linskey stated that he would not proceed with destructive procedures with cutting nerves unless attempts at nerve-sparing surgery were unsuccessful in the form of microvascular decompression. If microvascular decompression was considered, this would involve exploration and decompression of four separate cranial nerves. Microvascular decompression would involve a 50% chance of reduction in her background pain syndrome, but complete resolution was unlikely (Exhibit 14F p. 5).

AR 24. Upon reviewing the medical record in question, the court concludes that the ALJ did not mischaracterize Dr. Linskey's assessment. *See* AR 433-36.

Fourth, claimant argues that, while the ALJ stated that claimant elected to stop working, claimant's decision may have been due to a developing neurological condition. In her decision, the ALJ pointed out that claimant admitted that she stopped working for reasons unrelated to her health:

> There was evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. The claimant testified that she stopped working because there was a work slowdown and she volunteered to be the one in her office who was let go. She did not stop working for impairment related reasons.

AR 25. Considering claimant's previous testimony, claimant's conjecture regarding her rationale for ceasing to work is unpersuasive.

Finally, claimant argues that the "[t]he ALJ misstates Hunter's daily activities and does not provide any support that what she does would be consistent with work activity." ECF No. 18 at 24. Claimant's contention is without support. The ALJ summarizes claimant's daily activities as follows:

> The claimant engaged in a wide variety of daily activities. The claimant was able to care for her three small children, prepare light meals, shop, fold laundry, and drive a vehicle. Her chores were limited due to pain. She went to church and school activities regularly and she had no problems relating with others.

ECF No. 18 at 25. From this evidence, the ALJ could reasonably conclude that claimant's daily activities were inconsistent with claimant's allegations concerning the severity of symptoms.

Accordingly, claimant's arguments are without merit. The ALJ's RFC determination is supported by substantial evidence and contains no reversible error.

### VII. CONCLUSION AND ORDER

Plaintiff Jill Elizabeth Hunter's appeal from the administrative decision of the Commissioner of Social Security is denied, and the decision of the Commissioner of Social Security is affirmed. The clerk of court is directed to (1) enter judgment in favor of defendant Commissioner of Social Security and (2) close this case.

IT IS SO ORDERED.

Dated: March 20, 2019

_____
UNITED STATES MAGISTRATE JUDGE

No. 203.